UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

BARBARA A. ROY, WILLIAM
GLENN ROY, III,

        Plaintiffs,

vs.

        Case Number 08-10217-BC
        Honorable Thomas L. Ludington

MICHIGAN CHILD CARE CENTERS, INC.,
ROBIN A. PAUL,

        Defendants.
_____/

**ORDER DIRECTING THE PARTIES TO SUBMIT SUPPLEMENTAL BRIEFING**

On January 15, 2008, Plaintiffs Barbara Roy and William Roy, III, filed a complaint against Defendants Michigan Child Care Centers ("MCCC") and Robin Paul, alleging the following counts: (1) breach of fiduciary duty against Defendant Paul, (2) conversion against both Defendants, (3) fraudulent concealment against both Defendants, and (4) accounting. Each of the causes of action, in one way or another, relate to a withdrawal of $188,451.29 in October 2004 from an MCCC investment account, created to fund a nonqualified deferred compensation plan, and its corresponding payment to an entity known as Mid-Michigan Child Care, Inc. ("Mid"). Defendant Paul effectuated the withdrawal and its payment to Mid.

Even though the complaint includes language of "self-dealing" and conversion, it appears conceded by Plaintiffs that Defendant Paul never personally received the funds. While count III is labeled "fraudulent concealment," the language actually refers to a legal doctrine by which the statute of limitations may be tolled for the causes of action included at counts 1 and 2, rather than a separate cause of action. Similarly, an accounting is a remedy, rather than a separate cause of

action. Plaintiffs' complaint seeks treble damages for Defendant Paul's "conversion" in count II and an accounting.

Now before the Court are Plaintiffs' motion for summary judgment [Dkt. # 18], filed on December 3, 2008, and Defendants' motion to dismiss and for summary judgment [Dkt. # 19], filed on December 5, 2008. The parties filed responses [Dkt. # 21, 22] to each other's motions on December 23 and 29, 2008, respectively, and Defendant filed a reply [Dkt. # 23] on January 8, 2009. Plaintiffs' motion contends that Defendant Paul "transferred" $188,415.29 in violation of the deferred compensation plan and that Defendant Paul "is jointly and severally liable" for the sum received by Mid as a matter of law. Defendants' motion raises the threshold issue of whether Plaintiffs' claims are barred by the statute of limitations. Defendants have presented a plausible argument that Plaintiffs' claims are barred, however, the parties have not presented certain facts, which might be relevant to a determination of both the statute of limitations issue and the parties' motions generally. Thus, the Court will order supplemental briefing on the issues identified below.

I

The facts gleaned from the parties' motions are as follows:

Plaintiffs Barbara Roy and William Roy, III, are a married couple, currently residing in Florida. Plaintiff Barbara Roy started Defendant MCCC in about 1966 and served as its president until 1997. Plaintiff William Roy, III, is an attorney and has been involved with Defendant MCCC in various capacities, including as a board member and trustee. Defendant MCCC is a non-profit corporation that provides day care services in the Saginaw and Bay City area. The Restated Articles of Incorporation, dated September 9, 1985, reflect that the corporation was organized on a "directorship" basis as well as a "stock-share" basis with ten shares having been issued.

The bylaws for MCCC as well as the articles provide that the corporation was to be qualified under Internal Revenue Code § 501(c)(3) and that the corporation would not take any action that is not permitted to be carried on by a corporation formed and operated pursuant to § 501(c)(3). The articles reflect the following further covenant:

> No part of the asset of the corporation shall inure to the benefit of, or be distributable to, its members, trustees, officers, or other private persons, except that the corporation shall be authorized and empowered to pay reasonable compensation for services rendered and to make payments and distributions in furtherance of the purposes set forth in Article 11 hereof.

Defendant MCCC also became a participant in the Child and Adult Care Food Program administered by the State of Michigan.

Defendant Robin Paul began working for Defendant MCCC under Plaintiff Barbara Roy's direction in 1976, and it appears her primary role until 1997 was as a board member. Beginning in 1987, it is contended that a "transfer of control" from Plaintiff Barbara Roy to Defendant Paul took place over a ten-year period that required payment of either $250,000.00 or $300,000.00 from Defendant MCCC to Plaintiff Barbara Roy at a rate of either $25,000 or $30,000 per year.[1] Notably missing from the parties' papers are any documents memorializing the "transfer of control," the price for the "transfer of control," when and how payments were made, or how they were reported to the Internal Revenue Service by Defendant MCCC, Defendant Paul, or Plaintiff Barbara Roy. No explanation of Plaintiff Barbara Roy's relationship with Defendant MCCC between the years of 1987 and 1992, either as an employee, officer, or director, is included. Moreover, the Court is unclear who the officers and directors were, or whether any director minutes of Defendant MCCC reflect the transaction. If a stock ledger exists, the parties do not refer to it. If any of the shares of

---

[1] Plaintiff Barbara Roy contends $30,000 per year; Defendant Paul contends $25,000.

common stock changed hands, that is also unaddressed.

In November 1991, Plaintiffs apparently moved to Florida. Around that time, Plaintiff Barbara Roy consulted with a Florida attorney, Howard Crown, about the "buy-out" of her interest in Defendant MCCC and the preparation of the deferred compensation plan that is the focus of this case. On November 23, 1992, attorney Crown and Plaintiff William Roy, III, submitted a filing statement to the U.S. Department of Labor identifying the deferred compensation plan that had been adopted as an "unfunded top hat plan." The document appears to be executed by Plaintiff William Roy, III, as Defendant MCCC's president, and is attested to by Plaintiff Barbara Roy as its secretary. If there is any connection between the $250,000 or $300,000 payments for the "transfer of control," the putative "buy-out" about which Plaintiff Barbara Roy consulted attorney Crown, and the deferred compensation plan, it is not explained.

Further, there are no employment or consulting agreements included with any of the papers or any explanation of what services Plaintiff Barbara Roy would be performing in late 1993 or thereafter to justify the compensation under the deferred compensation plan. A few partial financial statements for Defendant MCCC are included at Exhibit L to Defendant's response for summary judgment [Dkt. # 21], which reflect funds being deposited to the deferred compensation plan. The same partial financial statements also reflect a developing account liability or loan described as "Due to Mid-Michigan Child Care Centers, Inc." The entries reflect the following:

|  | 1994 | 1995 | 1996 | 1997 | 1998 |
|---|---|---|---|---|---|
| **Assets** Investments and Deferred Compensation | $107,433 | $140,362 | $212,386 | $256,429 | $238,657 |
| **Liabilities** Mid-Michigan Child Care, Inc. loan | $3,782 | $0 | $71,000 | $222,000 | $300,878 |

While the balance sheet for Defendant MCCC reflects the fiscal year end balance for the deferred compensation plan, the parties papers do not reflect (1) what amount of money Plaintiff Barbara Roy deferred to the plan each year, (2) what amount of money Plaintiff Barbara Roy received each year from the plan, or (3) whether Plaintiff Barbara Roy received any other compensation during those years.

Exhibit L to Defendant's motion for summary judgment and brief in support [Dkt. #19] includes some additional portions of Defendant MCCC's financial statements. Of particular significance to the time period from 1994 to 1998 are copies of Note 2 to financial statements. The notes reflect notes receivable from B. Roy and G. Roy, as follows:

|  | B. Roy | G. Roy |
|---|---|---|
| 1994<br>**Total** | $10,000<br>**$10,000** | $15,730<br>**$15,730** |
| 1995<br><br><br><br>**Total** | $10,000<br>$13,115<br>$17,291<br>$18,778<br>**$59,184** |  |
| 1996<br><br><br><br><br>**Total** | $75,000<br>$10,000<br>$7,546<br>$9,999<br>$12,879<br>**$115,424** |  |
| 1997<br><br><br><br><br>**Total** | $230,200<br>$10,000<br>$1,564<br>$2,083<br>$6,433<br>**$250,280** |  |
| 1998<br><br><br>**Total** | $180,425<br>$45,200<br>$10,000<br>**$235,625** |  |

Later partial financial statements reflect further notes receivable from other borrowers from the deferred compensation plan, including Williamsberg, LLC ($176,991), Con-Pak Holding Co. ($45,200), Highland Park ($181,148), Praxis Packaging, LLC ($$47,894), and REI Group, Inc. ($75,000). The parties' papers do not identify who these parties are, what their relationships are to Plaintiffs and Defendants, the business purpose of the loans, or the status of the loans.

However, under Section 3.7(a) of the deferred compensation trust agreement, the assets of the trust fund are deemed to "constitute general unrestricted assets of the Company and shall be subject to the claims of creditors of the Company to the extent hereinafter set forth in this Section."

Under Section 3.7(b), the company is obligated to notify the trustee if the company becomes "unable to pay its debts as they mature or that the Company has become subject as a debtor to a pending proceeding under the United States Bankruptcy Code." Under Section 3.7(c), the trustee must "suspend payments" under the trust upon receipt of "a written allegation . . . that the Company has become unable to pay its debts as they mature, or that the Company has become subject as a debtor to a pending proceeding under the United States Bankruptcy Code." And finally, under Section 3.7(d), the trustee is prohibited from making payments under the trust, upon receiving notice pursuant to subsections (b) or (c), except as directed by "a court of competent jurisdiction. . . to satisfy the claims of the creditors of the Company. . . ." The only income statement furnished to the Court was, as previously indicated, for the year ending December 31, 2004, which reflected a loss of $80,718.44. The balance sheet for the same year reflects negative retained earnings of $973,284.25.

Additionally, under Section 8.1, the trust fund is held by the trustee "for the exclusive benefit of the Executives and Surviving Spouses and for the benefit of the creditor of the Company pursuant to Section 3.7. . . ." The section further states: "At no point prior to the complete satisfaction of all obligations to Executives and their Surviving Spouses under the terms of the Plan shall any part of the Trust Fund be used for or diverted to purposes other than for the exclusive benefit of the Executives and their Surviving Spouses." Paragraph six of the deferred compensation plan states: "All amounts credited to an Account shall constitute general assets of the Corporation and may be disposed of by the Corporation at such time and for such purposes as it may deem appropriate."

Attorney Crown served as the original trustee and Plaintiff Barbara Roy was the only participant in the plan. The plan allows officers, defined as "employees," and directors to participate

though only Plaintiff Barbara Roy utilized the benefit. Defendant Paul was named successor trustee at some point, pursuant to Plaintiff Barbara Roy's request. Under the plan, deferrals by officers were limited to those requested in a signed writing submitted by an officer prior to the year in which deferrals are to be made, and are limited to an annual maximum of $16,260, unless the board of Defendant MCCC approves a greater amount in writing. The plan provides that a deferral amount "shall remain constant" unless suspended or another election is submitted.

There are only two signed deferrals in Defendant MCCC's records: (1) a deferral request dated February 10, 1992, purporting to take retroactive effect to the beginning of 1992 in the amount of $16,260 and (2) a deferral request dated November 20, 1992, in the amount of $6,000. The $6,000 deferral was never modified so it was to continue until retirement pursuant to paragraph 2 of the plan. Defendants contend that the February 10, 1992, deferral can have no force or effect because it pre-dated the adoption of the plan, and that it was at least replaced by the later $6,000 deferral request.

Thus, Defendants contend that under the plan, Plaintiff Barbara Roy could not have deferred more than $6,000 per year, beginning in 1992 and continuing until her retirement in August 1997. Defendants contend that the records reveal that far more was being "booked" in the plan accounts for the benefit of Plaintiff Barbara Roy than she was permitted to defer during the same period of time. For example, they emphasize that in 1991, before the plan was even adopted, Defendant MCCC held $22,551 in investments, including twenty-three shares of Dow Chemical stock. Within two years, Defendant MCCC's investments were moved to the plan account. Again, however, despite the parties' wildly disparate accusations, the parties have not provided a coherent explanation of Plaintiff Barbara Roy's compensation between 1994 and 2004, including the amounts

that were deferred and the amounts that she received.

In 1994, as also earlier noted, Defendant MCCC began to borrow from another entity, Mid-Michigan Child Care, Inc. ("Mid"), which is described in the parties' papers as "related," in order to meet financial obligations, which, of course, would have included funding for Plaintiff Barbara Roy's deferred compensation. However, there is no description of the nature of Mid's business, how the entity was organized, who created the entity, who its officers and directors were, or how it is "related" to Defendant MCCC. It is simply alleged in the papers that by September 1997, Defendants MCCC owed Mid $222,000, without any explanation of how or why the account debt was incurred. By September 1998, it is asserted that Defendant MCCC owed Mid $300,878.

According to Defendants, by fall 2004, Defendant MCCC was in serious financial trouble. The State of Michigan was conducting a scheduled audit of Defendant MCCC as part of its participation in the Child and Adult Care Food Program, and it threatened to disqualify Defendant MCCC for not being able to demonstrate financial viability. Defendant Paul testified that the State was concerned that the amount booked to the account for the benefit of Plaintiff Barbara Roy did not "smell right."

On October 11, 2004, Defendant Paul withdrew the $188,451.29 from "Atlas Funds," the financial house accounting for the trust investments and an account designated as a plan account for the benefit of Plaintiff Barbara Roy. Indeed, the transaction is noted in the September 30, 2005, financial statement that also reflects the loss of a note receivable from Praxis Packaging, LLC, in the amount of $47,984, and a $10,000 note receivable from Plaintiff Barbara Roy. Defendant Paul testified in deposition that at the time she withdrew the funds, she thought "it would be paid back as a loan."

In December 2004, Defendants sent Plaintiff Barbara Roy a letter, stating:

We will need to borrow from your deferred compensation plan to help with cash flow. This will be paid back to Rabbi Trust U/A DTD 11/92 with payments as soon as we are in a better financial position.

We can discus the terms of payment and interest at that time.

Defendant Paul also sent Plaintiffs a holiday card stating, "I promise you will get your money."

On March 29, 2005, Defendant Paul sent an email to Plaintiff Barbara Roy stating, "You are correct, the 188,000 will need to be set up as a loan." On March 31, 2005, Plaintiff William Roy, III, sent a letter to Defendants stating that "[i]n the absence of a bankruptcy filing, [MCCC] has a contractual obligation to repay this amount to the Trust . . . . it is my opinion that this contractual liability must be reflected on the balance sheet." The letter further stated, "At some point, we will need to discuss how and when the contractual liability will be repaid." Plaintiff William Roy, III, also expressed his belief that "[u]nder the terms of the trust agreement, the Trustee is obligated to return those funds [to the company] *only in the event that the company files bankruptcy* or *becomes insolvent*." (emphasis added).

In October 2005, Plaintiff William Roy, III, sent Defendant Paul another letter stating, "You are not being honest with Barbara and me. Closing off communications will serve no purpose. . . ." Significantly later, in summer 2007, Defendant Paul sent a handwritten note to Plaintiffs stating: "The only money that is owed back to Barb is Atlas Michigan Child Care. Set this up however you want in the form of a loan - I hope we can start to make payments soon."

II

If matters outside the pleadings are presented and not excluded by the court in a 12(b)(6) motion, the motion must be treated as one for summary judgment under Federal Rule of Civil

z

Procedure 56. Fed. R. Civ. P. 12(d). Under Rule 56(c), a court must review "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," to conclude that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Court must view the evidence and draw all reasonable inferences in favor of the non-moving party and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

The party bringing the summary judgment motion has the initial burden of informing the court of the basis for its motion and identifying portions of the record which demonstrate the absence of a genuine dispute over material facts. *Mt. Lebanon Personal Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002). The party opposing the motion then may not "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact" but must make an affirmative showing with proper evidence in order to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). A fact is "material" if its resolution affects the outcome of the case. *Lenning v. Commercial Union Ins. Co.*, 260 F.3d 574, 581 (6th Cir. 2001). "Materiality" is determined by the substantive law claim. *Boyd v. Baeppler*, 215 F.3d 594, 599 (6th Cir. 2000). An issue is "genuine" if a "reasonable jury could return a verdict for the nonmoving party." *Henson v. Nat'l Aeronautics and Space Admin.*, 14 F.3d 1143, 1148 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 248).

### III

Generally, Plaintiffs contend in their motion for summary judgment that under the terms of the trust, specifically Section 8.1, trust assets may not be transferred to any party other than a trust

beneficiary unless the trustee has become aware that the company is either insolvent or a bankruptcy debtor and the payment has been directed by a court of competent jurisdiction.  Plaintiffs contend that neither condition was met when Defendant Paul transferred funds from the trust, and therefore the transfer is void and the funds must be restored.  Plaintiffs also contend that Defendant Paul is personally liable because her conduct, as the trustee, was not taken in good faith.

Defendants, on the other hand, contend that the trust gave Defendant MCCC the discretion to utilize funds to pay claims of creditors and to not make payments to the plan participant, Plaintiff Barbara Roy.  Defendants contend that Section 3.7 of the trust merely requires that in the event that a trustee receives formal notice of insolvency, the trustee will stop making payments under the plan except as directed by a court of competent jurisdiction.  Defendants contend that Defendant MCCC had unfettered discretion to pay the claims of its creditors regardless of whether they filed lawsuits or for involuntary bankruptcy.  Defendants also contend that Plaintiff Barbara Roy has already received more than she could be entitled to receive in distributions based on the terms of the plan though they have not sought to explain or document the assertion.

Additionally, the threshold question of whether Plaintiffs' claims are barred by the applicable statute of limitations is raised in Defendants' motion.  Before proceeding to the merits of Plaintiffs' claims, it is necessary to resolve this question.  As previously mentioned, the parties have not adequately outlined the relevant facts for the Court, and supplemental briefing is necessary before the Court can decide the question or reach the merits of Plaintiffs' substantive claims.

The parties agree that a three-year statute of limitations applies to Plaintiffs' claims. However, the parties dispute the point at which Plaintiffs' claims accrued.  Under Michigan law, a claim generally accrues "at the time the wrong upon which the claim is based was done regardless

of the time when damage results." Mich. Comp. Laws § 600.5827. Certain exceptions apply, such as when a claim is "fraudulently concealed":

> If a person who is or may be liable for any claim fraudulently conceals the existence of the claim . . . from the knowledge of the person entitled to sue on the claim, the action may be commenced at any time within 2 years after the person who is entitled to bring the action discovers, or should have discovered, the existence of the claim . . . although the action would otherwise be barred by the period of limitations.

*Id.* § 600.5855.

Defendants contend that Plaintiffs' claims accrued on October 11, 2004, because "the wrong upon which the claim was based," § 600.5827, Defendant Paul's withdrawal of funds from the trust account, occurred on that date. Therefore, in Defendants' view, Plaintiffs must have initiated their claims by October 11, 2007, in order for them to be timely. Defendants further contend that Plaintiffs' claims were not "fraudulently concealed" because Defendants notified Plaintiff Barbara Roy that the funds had been withdrawn in December 2004. Even accepting that Plaintiffs' claims were fraudulently concealed until March 2005, when Plaintiffs requested that the loan be documented, Defendants contend that Plaintiffs would only have two years from March 2005, the date of "discovery" of the claims, to initiate them. Therefore, the statute of limitations would not extend past October 11, 2007, because two years from March 2005 is only March 2007. Finally, Defendants contend that Plaintiffs' claims could have accrued no later than October 2005, because at that time, Plaintiff William Roy, III, accused Defendant Paul of "dishonesty" and "cutting off communications."

In contrast, Plaintiffs contend that their claims did not accrue until after the summer of 2007 because they were not harmed until then, when it became apparent that Defendants did not intend to "replace" the funds. Plaintiffs argue that the time of the "wrong" specified in § 600.5827, refers

to the date on which a plaintiff is actually "harmed," not the date on which the defendant acted unlawfully. Plaintiff cites *Schaendorf v. Consumers Energy Co.*, 739 N.W.2d 402, 406 (Mich. Ct. App. 2007), in which the court stated, "the term 'wrong' refers to the date on which the plaintiff was harmed by the defendant's act. . . ." Plaintiffs contend that they were not harmed, within the meaning of § 600.5827 and *Schaendorf*, until after summer 2007, because Defendant Paul repeatedly assured Plaintiffs that the funds would be repaid, and did so assure them as late as summer 2007.

Notably, however, *Schaendorf* dealt with a negligence claim, for which an "injury" is a necessary element. The court reasoned that "the term 'wrong' refers to the date on which the plaintiff was harmed by the defendant's act, not the date on which the defendant acted negligently because that would permit a cause of action to be barred before any injury resulted." *Schaendorf*, 739 N.W.2d at 406-07 (stating that "a cause of action for a tortious injury accrues when all the elements of the claim have occurred and can be alleged in a proper complaint"). In particular, the court was faced with a situation in which the injury caused by the unlawful conduct was delayed, such that the statute of limitations could run before any harm actually occurred.

In this case, however, accepting Plaintiffs' allegations as true, Plaintiffs were injured when Defendant Paul withdrew the funds, thus, the "wrong" and the "harm" occurred at the same time. All of the elements of Plaintiffs' claims occurred as of October 11, 2004, and could have been alleged in a complaint at that time. Plaintiffs' contention that they were not injured until Defendants refused to replace the funds is inconsistent with their position that Defendants were not authorized to withdraw the funds under the terms of the trust. It is also undercut by the fact that Plaintiffs have advanced no evidence to support their contention that Defendants "signaled" that they refused to repay the funds post-summer 2007. Moreover, Plaintiffs do not point to any harm occasioned by

anything other than the withdrawal of the funds.

Plaintiffs also contend that a claim for breach of fiduciary duty "accrues when the beneficiary knew or should have known of the breach," citing *Bay Mills Indian Cmty v. Michigan*, 626 N.W.2d 169 (2001). However, *Bay Mills* has been overruled to the extent that it held that a claim for a breach fiduciary duty did not accrue until the breach was discovered. *Webb v. Webb*, Nos. 263759, 263900, 2006 WL 173172, at *3 (Mich. Ct. App. Jan. 24, 2006) (stating that "a claim accrues when the wrong is committed, not when it is discovered") (citing *Boyle v. Gen. Motors Corp*, 661 N.W.2d 557 (Mich. 2003)); *Trentadue v. Gorton*, 738 N.W.2d 664, 670-72 (Mich. 2007) (noting that Michigan's common law discovery rules were abrogated and explaining that "the Legislature intended the [statutory] scheme to be comprehensive and exclusive").

Based on the above, Defendants have presented a plausible argument that Plaintiffs' claims are barred by the statute of limitations. However, certain background facts, relevant to Plaintiffs' contention that Defendants "fraudulently concealed" their claims were not provided by the parties. For example, while the parties have explained that Plaintiff Barbara Roy was the president of Defendant MCCC until 1997, they do not explain what her role was thereafter. It is unclear whether she became an officer or board member at any point or if she has been involved with Defendant MCCC in any capacity at all from 1997 through January 2008. It is also not clear what her role was from 1987 to 1997 as a "consultant" and what compensation she received during that time period. Likewise, the parties have indicated that Plaintiff William Roy, III, has served as a board member, a trustee, and possibly even the president, but it is unclear which role he filled at various times, and particularly during the period from 1997 to January 2008.

The parties have also not explained the relationship between Defendant MCCC and Mid, the

"related" entity that Defendant MCCC was borrowing from to generate the funds, in part, that were necessary to finance the deferred compensation arrangement for Plaintiff Barbara Roy. It is unclear whether Plaintiffs or Defendant Paul were board members, officers, or employees of that organization. It is equally unclear under what circumstances Defendant Paul decided to withdraw the $188,415.29 or if the parties or their accountants had any contemporary or later communications.

Accordingly, it is **ORDERED** that the parties are **DIRECTED** to submit supplemental briefing on the issues outlined above, on or before **April 15, 2009**.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: March 11, 2009

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 11, 2009.

s/Tracy A. Jacobs
TRACY A. JACOBS